UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DONNA MARIE McGONIGAL,<br><br>              Petitioner,<br><br>   v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security<br>Administration,<br><br>              Respondent. | Case No. 4:17-CV-00319-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Currently pending before the Court for its consideration is Petitioner Donna Marie McGonigal's Petition for Review of the Respondent's denial of social security benefits. (Dkt. 1.) The Court has reviewed the Petition for Review, the Answer, and the administrative record (AR), and for the reasons that follow, will remand to the Commissioner.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on June 12, 2013, alleging disability beginning on June 30, 2001. This

**MEMORANDUM DECISION AND ORDER - 1**

application was denied initially and on reconsideration, and a hearing was held on October 9, 2015, before Administrative Law Judge (ALJ) Richard A. Opp. After hearing testimony from Petitioner and an impartial vocational expert, ALJ Opp issued a decision on December 18, 2015, finding Petitioner not disabled. Petitioner timely requested review by the Appeals Council, which denied her request for review on May 30, 2017.

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 39 years of age. She has a ninth-grade education. Petitioner's prior work experience includes a long history of part-time work as a newspaper and magazine distributor and as a coin operator with Idaho State Publishing. Petitioner alleged disability due to anxiety disorder, Crohn's disease, Barrett's esophagus, irritable bowel syndrome, arthritis, and depression.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is presently engaged in substantial gainful activity. The ALJ determined Petitioner did engage in substantial gainful activity after her alleged onset date of June 30, 2001. However, the ALJ found that the period of substantial gainful activity was limited, having occurred from January 1, 2013, to June 14, 2013. Prior to 2013, and after June 14, 2013, Petitioner's earnings were below the SGA level. Accordingly, the ALJ proceeded to consider the remaining steps in the sequential

process. *See* 20 C.F.R. § 404.1520(b); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (step one asks whether the claimant is "presently working in a substantial gainful activity").

At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's colitis, depressive disorder, and panic disorder to be severe impairments within the meaning of the regulations. (AR 17.) The ALJ determined that Petitioner's arthritis and lumbar pain were not medically determinable impairments and thus were not severe. (AR 18.) The ALJ did not address the severity of Petitioner's Barrett's esophagus, despite mentioning that the record reflected a long history of treatment for various gastrointestinal conditions, including Barrett's esophagus. (AR 17-18.)

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments, specifically considering listings 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). (AR 18.)[1]

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four,

---

[1] The ALJ did not evaluate Petitioner's colitis or Barrett's esophagus under Listing 5.00, which covers disorders of the digestive system. During the proceedings before the agency, Petitioner conceded her gastrointestinal problems did not specifically meet or equal the criteria for a listed impairment. (AR 299.)

**MEMORANDUM DECISION AND ORDER - 3**

whether the claimant has demonstrated an inability to perform past relevant work. When assessing Petitioner's RFC, the ALJ determines whether Petitioner's complaints about the intensity, persistence, and limiting effects of her pain are credible.

Here, the ALJ found Petitioner's complaints not entirely consistent with the medical evidence and other evidence in the record. The ALJ determined Petitioner retained the RFC to perform light work with restrictions against climbing of ladders, ropes and scaffolds. (AR 19.) The ALJ limited Petitioner to positions having no contact with the public and occasional interpersonal contact with coworkers and supervisors. *Id*.

The ALJ found Petitioner was able to lift and carry twenty pounds occasionally and ten pounds frequently, and she could stand or walk for up to six hours, and sit up to six hours during an eight-hour workday with normal breaks. *Id*. Additionally, the ALJ found Petitioner was able to push or pull with her upper extremities, occasionally operate foot controls, work on ramps and stairs, and frequently balance, stoop, kneel, crouch, crawl, reach, handle, finger, and feel. *Id*. Finally, the ALJ determined that Petitioner could concentrate and attend to tasks for an eight-hour workday with normal breaks while preforming short and simple instructions. *Id*.

The ALJ found Petitioner was not able to perform her past relevant work as magazine and newspaper distributor or coin machine collector. (AR 26.) Thus, at step five, the burden shifted to the Commissioner to demonstrate that the claimant retained the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age,

education and work experience. Here, the ALJ found that Petitioner retained the ability to perform the requirements of certain light work occupations such as housekeeping cleaner, garment folder, and gluer. (AR 27.) Consequently, the ALJ determined Petitioner was not disabled. *Id*.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th

**MEMORANDUM DECISION AND ORDER - 6**

Cir. 1993).

## DISCUSSION

Petitioner filed a pro se application and petition for review requesting the Court reverse the Commissioner's decision finding her not disabled. (Dkt. 1, 2.) She alleged that the "Defendant did not allow vital evidence that would have proved favorable for plaintiff's case." (Dkt. 2.) The Court issued a procedural order explaining the proceedings and notifying the parties of the briefing schedule. Respondent filed an answer to the petition for review and lodged a copy of the Administrative Record. (Dkt. 16, 17.) No briefs were filed.

Nonetheless, the Court has an obligation to review the record. Additionally, where a party proceeds pro se, the Court must construe the allegations of the pleading liberally and afford her the benefit of any doubt. *Griffin v. Berryhill*, 2018 WL 3216895 (W.D. Wash. July 2, 2018) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)).

The Court construes the petition for review as challenging the ALJ's consideration and evaluation of the evidence. After reviewing the record, and as explained below, the Court finds the ALJ erred at step two, which in turn caused error at step four, because the ALJ failed to account for Petitioner's symptoms caused by Barrett's esophagus and colitis.

1. **Step Two Determination**

An impairment or combination of impairments may be found "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an

MEMORANDUM DECISION AND ORDER - 7

individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The Commissioner has stated that "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Smolen*, 80 F.3d at 1290 (quoting S.S.R. No. 85–28 (1985)). Step two is generally regarded as "a de minimis screening device [used] to dispose of groundless claims," *Smolen*, 80 F.3d at 1290, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence," S.S.R. 85–28.

A. *Colitis*

Here, the ALJ found Petitioner's colitis severe, but then questioned Petitioner's credibility at step two regarding her medical condition. The ALJ noted Petitioner reported she had Crohn's disease, but that "no specialist at any time actually ever diagnosed her with it." (AR 18.) He questioned her diagnosis of colitis, commenting that her positive tests for occult blood in June and July of 2015 did "not necessarily mean she has colitis. The blood could be from her upper GI tract." And finally, the ALJ questioned Petitioner's credibility because she declined a suggested colonoscopy and had not seen a gastroenterologist after being seen by a specialist, Dr. Eric Wingerson, in March of 2011. (AR 18, 302.) The ALJ next indicated that Petitioner's colitis was severe "in that at times the claimant may have some fatigue related to this, which could contribute to her being a [sic] limited to light work." (AR 18.)

**MEMORANDUM DECISION AND ORDER - 8**

The ALJ's step two determination constitutes harmful error. Whether Petitioner suffered from colitis or Crohn's is not material, given her diagnosis of colitis and her treatment history. Substantial evidence in the record revealed a long history of gastroenterological symptoms and treatment for colitis and Barret's esophagus, which caused significant complications.

Furthermore, the Social Security Administration has defined colitis as a chronic disease, curable by a total colectomy (colon transplant). 20 C.F.R. § 404, Supp. P, App. 1, 5.00(e)(1). Since the record does not indicate Petitioner has received a total colectomy, it is logical that she still has colitis, despite the seven-year gap in testing. Although Petitioner states that treating medical providers have advised she receive additional colonoscopies, she has not followed through on the recommendations because of the expense of seeing a specialist to perform the procedure. (*See* AR 346, 373, 374, 396.) Benefits may not be denied to a disabled claimant because of a failure to obtain treatment that the claimant cannot afford. *See, e.g., Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).

Petitioner was admitted to Bannock Regional Medical Center on June 26, 2001, after presenting with an onset of gross hematochezia. (AR 435.) While in the hospital, upper endoscopy revealed mild erosive esophagitis, and a colonoscopy revealed old blood in the terminal ilieum and a clot in the cecum. (AR 435.) She was diagnosed with acute colitis. (AR 423.)

On August 21, 2002, Petitioner underwent a colonoscopy. (AR 421.) Three

samples were biopsied – two from the colon, and one from the esophagus. (AR 423.) Dr. Steve M. Skoumal's pathology report revealed acute colitis, edema and hemorrhage, and Barrett syndrome. (AR 423.) At a follow up visit with Dr. Wingerson, a gastroenterologist, on August 20, 2003, Petitioner reported continuing symptoms of diarrhea, which were controlled somewhat by medication. (AR 396.) Despite the medication, she reported continued bloating and nausea. Dr. Wingerson at that time diagnosed a combination of nonspecific ileocolitis and irritable bowel syndrome given her history; and gastroesophageal reflux disease with a biopsy of Barrett's esophagus as a complication. (AR 397.) The record revealed ongoing treatment for symptoms related to colitis and Barrett's esophogus. It was therefore error for the ALJ to question the validity of the diagnosis at step two.

Next, it was improper for the ALJ to question Petitioner's credibility at step two based upon her subjective understanding of her symptoms and the official disease diagnosis. The ALJ's credibility determination should occur at step four and focus on Petitioner's subjective symptom testimony regarding her pain, not the ALJ's alternative theory concerning her medical condition. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (setting forth the two-step credibility analysis at step four).

### B. *Barrett's Esophagus*

And finally, there is substantial evidence in the record that Petitioner suffers from Barrett's esophagus, (also known as Barrett's syndrome), which manifests itself as "chronic peptic ulceration of the lower esophagus, which is lined by columnar

epithelium, resembling the mucosa of the gastric cardia, acquired as a result of long-standing chronic esophagitis; esophageal stricture with reflux, and adenocarcinoma, also have been reported. Associated with a 30-to-40 fold increased risk of adenocarcinoma." 877090 Barrett Syndrome, STEDMANS MEDICAL DICTIONARY 877090. The ALJ mentioned Petitioner had a history of treatment for Barrett's esophagus, but offered no analysis regarding its severity at step two, or a discussion of her symptoms at step four.

Taken together, the ALJ's assessment of Petitioner's credibility and his failure to analyze the severity of Petitioner's Barrett's esophagus at step two constitutes harmful error.

**2.      Step Four Determination**

At step four, the ALJ is responsible for determining credibility, resolving conflicts in medical evidence, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680. General findings

are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

When evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

In this case, the Court finds the ALJ erred at step four by failing to evaluate the nature, severity and effect of the symptoms caused by Petitioner's gastrointestinal impairments. Instead, the ALJ incorrectly considered Petitioner's credibility at step two.

**MEMORANDUM DECISION AND ORDER - 12**

He then failed to consider the intensity, persistence, and limiting effects of Petitioner's symptoms related to Barrett's esophagus and colitis at step four, despite the existence of substantial evidence in the record of the same.

### A. *Symptoms of Colitis*

First, as indicated above, it was error for the ALJ to discredit Petitioner at step two because she believed she had Crohn's disease, despite a definitive diagnosis of colitis by gastroenterologist Eric Wingerson, M.D., in 2011. (AR 18, 303.)[2] While Crohn's disease and ulcerative colitis are distinct diseases, they "share many clinical, laboratory, and imaging findings, as well as similar treatment regimens." 20 C.F.R. § 404, Supp. P, App.1, 5.00(e)(1) (Crohn's disease may involve the entire alimentary tract while colitis only affects the colon.). Accordingly, both conditions are recognized under Listing 5.06 for inflammatory bowel disease (IBD).

Second, it was error for the ALJ to question Petitioner's diagnosis and utilize his own opinion to discredit Petitioner at step two. The ALJ found that, although Dr. Wingerson diagnosed Petitioner with colitis in 2011, the lack of colonoscopy testing after that date undermined the original diagnosis. (AR 18.) Further, the ALJ questioned the sufficiency of Dr. Wingerson's diagnosis by stating that, although tests done by physicians in 2015 showed occult blood, a symptom of the condition, this finding "does not necessarily mean that she has colitis." *Id*. However, the record was replete with

---

[2] Petitioner suffered also from acute colitis in 2001. (AR 423.)

**MEMORANDUM DECISION AND ORDER - 13**

references to Petitioner's diagnosis of colitis after her hospitalization for an episode of acute colitis in 2001.

And, while a failure to follow prescribed treatment may be used as sufficient evidence to support a conclusion that a claimant is not credible in describing symptoms about pain and form the basis for finding the complaint unjustified or exaggerated, *Orn v. Astrue*, 495 F.3d 625, 637-638 (9th Cir. 2007), benefits may not be denied to a disabled claimant because of a failure to obtain treatment that the claimant cannot afford. *See, e.g., Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). Although Petitioner testified that treating medical providers recommended she receive additional colonoscopies, she had not followed through on the recommendations because of the expense of seeing a specialist to perform the procedure. (*See* AR 346, 373, 374, 396.)

Nothing in the record suggests an inconsistency in Petitioner's colitis diagnosis; she has received treatment for the disease since 2001, she has continually relayed symptoms of the condition to treating healthcare providers (*see* AR 308, 311, 318, 322, 328), external examinations performed found abdominal tenderness (*see* AR 346, 395), and fecal testing in 2015 showed occult blood (*see* AR 497, 521). The record contains substantial evidence that Petitioner's financial poverty resulted in an inability to obtain follow-up care from a specialist or obtain recommended tests. (AR 48, 333, 340.) Rather, the record indicates she was able to receive the testing that resulted in her colitis diagnosis because Dr. Wingerson preformed the procedures at no cost to Petitioner. (AR 48, 340.)

And finally, the ALJ improperly evaluated Petitioner's credibility at step two by concluding, without analysis, that her medications completely attenuated all her gastrointestinal symptoms. The record establishes that, from approximately 2003 through 2011, albeit at times sporadically, Petitioner received specialized medical care for gastrointestinal issues, including an endoscopy, from Dr. Wingerson. (AR 314.) Dr. Wingerson diagnosed Petitioner in 2011 with colitis after reviewing her health records, including internal imaging of her colon. (AR 303, 396.) The record indicates that other physicians who treated Petitioner prior to Dr. Wingerson also found colonoscopy and biopsy results "consistent with colitis." (AR 409, 423.)

The ALJ also diminished the weight of Petitioner's assessment of her ability to sustain work on a full-time basis, again with no analysis, because he found the record indicated Petitioner at times could "completely attenuate" her colitis symptoms by medication. (AR 18.) He determined the primary impact of colitis upon her ability to sustain full time work would be "some fatigue . . . which would contribute to her being a [sic] limited to light work." *Id*. This conclusion was error.

The Court of Appeals for the Ninth Circuit has held that, when "evaluating whether the claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's "ability to work on a sustained basis." *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1996) (citing 20 C.F.R. § 404.1512(a)). "Occasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability." *Id.* In other contexts, the Ninth Circuit has determined in circumstances when "[c]ycles of

**MEMORANDUM DECISION AND ORDER - 15**

improvement and debilitating symptoms are a common occurrence . . . it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (discussing the waxing and waning nature of mental health issues in the course of treatment).

Here, the record indicates Petitioner has been treating her colitis since approximately 2001. (AR 406, 409, 410, 423.) Since 2008, her treatment has largely consisted of medication follow-ups and checkups, and her medical records show consistent complaints of gastrointestinal symptoms and a prescribed medication regimen to treat the same. (AR 499.) Throughout her history with the disease, she has experienced diarrhea, fecal incontinence, rectal bleeding, abdominal pain and tenderness – all symptoms the Social Security Administration has determined are hallmarks of IBD. 20 C.F.R. § 404, Supp. P, App. 1, 5.00(e)(2).

In 2009, Petitioner stated that her cramps and incontinence issued were "going haywire." (AR 358.) In 2011, Petitioner complained of increased symptoms of Crohn's and systematic relapses of abdominal pain, diarrhea, hematochezia, melena, and severe bleeding. (AR 346.) In 2014, she stated that she experienced bleeding, cramping, and pain on a somewhat regular basis. (AR 511.) In 2014, she declined a suggested colonoscopy procedure (due to cost) and elected stool testing, which tested positive for occult blood. (AR 497.) During the hearing in 2015, she testified she had flare-ups of gastrointestinal issues "at least once a week" sometimes proceeding for "a whole week

**MEMORANDUM DECISION AND ORDER - 16**

non-stop." (AR 42.) Petitioner consistently stated she suffered from Crohn's disease and/or colitis to medical professionals, and she saw a healthcare provider on a yearly to twice-yearly basis to manage the disease. (AR 497.)

It was an accurate finding by the ALJ that there were times when Petitioner saw a healthcare provider and did not express any gastrointestinal issues. (AR 18.) But, the ALJ drew the conclusion that the periodic nature of these symptoms suggested that her symptoms may be "completely attenuated by medication." *Id*. He then cohncludes this inconsistency weakened the credibility of her testimony concerning the significance of her symptoms. *Id*. However, as noted by the Social Security Administration, the presence of the symptoms of IBD are not constant in those with the condition. In fact, "remissions and exacerbations or variable duration are the hallmark of IBD." 20 C.F.R. § 404, Supp. P, App. 1, 5.00(e)(1). Thus, the waxing and waning symptoms Petitioner described are not indicative of either medication's ability to "completely attenuate" the effects of colitis or the Petitioner's credibility, but instead, are simply indicative of the disease itself. Thus, any impact these periods of remission had on the ALJ's assessment of Petitioner's credibility or the determination that she was able to perform light work, especially at step two and without any further analysis at step four, was in error.

B.  *Symptoms of Barrett's Esophagus*

Further, although the ALJ refers to Petitioner's Barrett's esophagus, he failed to consider the symptoms of the condition in assessing her residual functional capacity. While the tissue changes that characterize Barrett's esophagus generally cause no

**MEMORANDUM DECISION AND ORDER - 17**

symptoms, individuals with the condition often experience frequent heartburn, difficulty swallowing food, and chest pain due to gastroesophageal reflux disease. MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/barretts-esophagus/symptoms-causes (last visited Sept. 6, 2018). The ALJ must consider all of Petitioner's impairments, alone and in combination, in an assessment of their cumulative effect on Petitioner's ability to perform gainful work on a consistent basis.

The ALJ's failure to discuss the nature, severity, and effect of her symptoms caused by colitis and by Barrett's esophagus at step four resulted in an incomplete analysis, and resulted in error because not all of the effects of Petitioner's impairments were considered in determining Petitioner's RFC.

## CONCLUSION

The Court finds that remand is appropriate to remedy the defects in the ALJ's determination. *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). Therefore, the Court will remand for further proceedings consistent with this opinion.

# ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) The Petition for Review (Dkt. 1) is **GRANTED**.

2) This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3) This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: September 6, 2018

_____
Honorable Candy W. Dale
United States Magistrate Judge